Good morning, Your Honors. May it please the Court, Laura Etlinger for the State Defendants. This appeal concerns application of qualified immunity to plaintiff's due process and Eighth Amendment claims, and I'd like to start with the due process claim. The State Defendants are entitled to qualified immunity on the due process claim for either of two reasons. First, Early v. Murray did not clearly establish that a variation from any directive in a sentencing order violates substantive due process, nor is it clear that what happened here was a variation from the judge's directive regarding programming, because the state officials reasonably understood that directive to incorporate the rules governing that program participation. Second, we know from this Court's decision in Hurd v. Friedenberg that it wasn't clearly established at the time of these events that a liberty interest implicating due process, that an individual has a liberty interest implicating due process in a sentencing directive like this that gives only the possibility of earlier conditional release. So let me ask you to start. Your view is Early does not, well, my read on Early is it stands for the proposition that DOCS does not have the authority to alter a sentence. Only a judge can issue a sentence. So now explain to me why that doesn't apply to this situation. Well, we take the position that Early says that, but that this Court explained in Suttler v. City of New York and Francis v. Fiaco that that's broad dicta from Early in the Court's words in Francis. What's your view of the holding of Early? That the holding was that for qualified immunity purposes, the context matters. And what the context of Early involved augmenting a sentence with a term that was not pronounced by the sentencing court. Because if Early stood for this broader proposition for qualified, if it clearly established for qualified immunity purposes. Wasn't the sentence augmented here in the sense that it wound up being arguably 500 days longer? Well, the sentence, his term of sentence was four years. And that was the pronounced term of the sentence that the Court announced. Part of the pronounced term also was the shock program. That he had an opportunity if he successfully completed the shock program. It's also not clear under New York State law that a sentencing directive instructed by the Court is a term of the sentence. So it wasn't even clear that that is what is considered a term of the sentence, whereas the maximum term of- What's the difference between a sentencing court's directive and a term of the sentence? If the sentencing court says, this is your sentence, you get this much time, you should be enrolled in shock. How is that not part of the sentence? Under New York law, the appellate courts have interpreted a sentencing judge's instructions regarding a programming not to be a term of the sentence that- Even when there's a statute that says the sentencing judge has the authority to enroll someone in shock, that's still not discretionary? Well, it's not discretionary, but the state court makes a distinction between certain instructions that the court gives and a term of the sentence. But I don't think that's crucial to the qualified immunity here. Why does it matter what early held? Why isn't it- This wouldn't be true in all cases, but when it is true that the provisions of a statute make certain conduct illegal, if the statute clearly says a police officer may not do this, or a correction officer may not do this, and the person does it, why do you need to look to court interpretation? Why do you need to find a court saying the statute means what it says, when the statute obviously means what it says? Your Honor's talking about the penal law provision under- When the answer, a clear answer is to be found from the provisions of the statute, why do you need to debate over whether there is a case that clearly says that the statute means what the statute clearly says? Well, at the time of these events, no court had rejected the state defendant's interpretation of the statute, and there is language in the statute- I mean, it's another thing if courts had ruled the opposite direction, but you say no court had ruled in that way, that's my question, is why do you need a court ruling saying, in case anybody needs to know, the statute says this and it means it? Why isn't it reading the statute enough to establish what the statute clearly says? I'm sorry, we do take the position that there was language in penal law section 60.04 that supported the defendant's interpretation of that statute, but it's also clear under this court's decisions that a violation of state law is not necessarily a due process violation. So that's my next question, is why should that matter in the logic of qualified immunity? The logic of qualified immunity is when state officers can have reasonable reason to believe that what they are doing is lawful, they should not be hesitant to give their full energy to doing that for fear of being sued, being taken by surprise by a subsequent adjudication that it was illegal. But then, if it's clearly illegal under state law, what sense does it make to give them qualified immunity when there's no doubt that they're acting illegally? That simply doesn't make any sense at all. It has no relationship to forwarding the purposes of the strange doctrine of qualified immunity. Qualified immunity does make a certain sense, debatably, but it does make sense when it says if the officer could reasonably believe that they were acting lawfully, they should be allowed to act with full vigor in that direction. But how does that work when the officer clearly should know that what they're doing is unlawful? Well, we don't agree that it was clear. I know you don't, but assuming that it's true, assuming that the court would find that state law unquestionably and shouldn't the law require a further finding that this also is a violation of federal law? Well, they have to be, the defendants had to be violating his due process or Eighth Amendment rights in some way, and we know from HERD that there wasn't even a protected liberty interest in the... Well, I mean, if a court found that there wasn't a violation of due process, then the defendant would prevail. But why should they have immunity when they knew or should know that they were acting unlawfully? Well, they would still have immunity if he had no protected liberty interest because there couldn't be a due process violation, and we know that from HERD. And this court has said that violations- It's a merits question. I'm sorry. It's a merits question. We're talking about an immunity question. Well, it's also an immunity question if there is no violation at all. Did you argue below that there was no violation, or did you just argue that the right was not clearly established? We argued below that the right was not clearly established, but this court has the discretion to reach either issue on appeal. And the lack of a liberty interest, I still think it's the clearly established law that I'm going for, not the merits. Because it wasn't clearly established to these defendants that what they were doing would have been implicating anybody's due process rights. That's how it was analyzed in HERD as a clearly established aspect of the qualified immunity. And is that because it's your view that this was not an alteration of a sentence, or because- No. I'm sorry. No. Go ahead. No, it's because the due process, the liberty interest that all the cases have recognized is the liberty interest in serving no more than the maximum term of your sentence. And here, this was only a possibility for conditional release. Is that inaccurate? I mean, that wasn't what was going on in early. It wasn't about a maximum prison sentence. It was about this additional condition of post-release supervision. So it's not clear to me that the case law says that all that the state authorities don't have the right to do is increase your maximum sentence. It's that there's no right to alter your sentence. But I don't think that was the liberty interest at issue. In early, was to have the term of your sentence pronounced by a sentencing court. The liberty interest here is in obtaining early conditional release, and that's what HERD instructs was not clearly established, that there was such an interest. So we're not relying on HERD for the merits, but for the clearly established law. And that is how it is analyzed in HERD. Okay, thank you. Where's your some red bottle pen? Good morning, your honors. Deborah Greenberger for Plaintiff Appellee. The defendants here are prison officials who did not want to follow the clear terms of the sentencing court's sentencing and commitment order. The clear terms of that order said, shock incarceration ordered, and cited the relevant penal law provision. Unlike the cases that the defendants rely on, the defendants here were not acting reasonably or responsibly. They were not trying to square competing sentences. All they had to do was follow the clear terms of the court's order. And they chose, they made a decision not to do so. Can you address the question of HERD, whether or not you think that's distinguishable from this case, or how it relates to this case? Absolutely, your honor. So in HERD, the issue was not the terms of the sentencing and commitment order. What Early teaches us, as I understand it, is that the terms of that sentencing and commitment order are inviolate. Even if the sentencing judge makes a mistake, even if the sentencing judge violates state law, what DOCS officials need to do is go back to that sentencing judge to fix the sentence. But in HERD, there was no problem with the terms of the sentencing and commitment order. That was lawful, and DOCS officials did not violate the terms of that order. What was going on in HERD was a different question, about a state created right under the legislative act that did not find its way into the final order. And because of that, HERD doesn't cite Early, it doesn't cite Wampler. It's not a case about altering a judge's sentence. The practice had long been that DOCS administered the program. Why wasn't it reasonable for DOCS to continue believing that it had at least some role in this? In deciding whether someone qualified, was eligible, or should continue? For two reasons, Judge Chen. First, as we allege in the complaint, the 2009 DLRA Drug Law Reform Act was a major watershed. It said, it was a legislative determination that the Rockefeller drug laws were leading to sentences that were too long for drug crimes. And that the legislature wanted to make it easier to allow people access to drug treatment and early release. And so DOCS was required, because of this legislative change, this major legislative change, to change its longstanding practices of screening people. So that's one reason. The second reason is that the legislature didn't just think that, they wrote it in the statute. And the statute is very clear, that the only power that DOCS has is after somebody is enrolled, they have to be participating in the program in good faith. If they are acting out, they can be disciplined, and DOCS retains the power to remove them from the program. But if a court order says, shock incarceration ordered, DOCS needs to enroll the incarcerated person in shock. What about the Eighth Amendment claim? I mean, the Eighth Amendment requires a certain state of mind. Do we have that here, as a matter of law? I mean, they were trying to implement a statute, or they thought they were implementing a statute. They thought they had certain ability under the statute. Do you have the requisite state of mind, I guess is my question, for an Eighth Amendment claim? Understood, Your Honor. So, first of all, I think it's important to recognize we're at the pleading stage, right? So in our complaint, we detailed the state of mind of each of these actors. And ultimately, at summary judgment, we'll have to see that we can establish the evidence supporting our pleadings. But what's important to recognize is for each and every one of these defendants, they were told by Mr. Matzel, or his counsel, or both, that there's a sentencing and commitment order that orders him to be enrolled in shock. And each of these defendants, notwithstanding having communications, and this is detailed throughout the complaint, but I would refer you specifically to paragraphs 14 through 20, despite having those communications, they- How much weight should that have, I mean, attorneys contact docs all the time about various issues. I mean, certainly they're not required to rely on the advice of defense counsel, necessarily, in setting policy, are they? They're not required to rely on the advice of defense counsel, of course, Judge Lee. But what they're required to do is make sure that they are complying with the sentencing and commitment order. Now, if they said somehow that they had the wrong order, or they didn't know about the order, then maybe we would have a question about their state of mind. What was, can I just ask you, what was the district court's analysis as to this eighth amendment claim? Is it clear from, I mean, it's not clear to me how or if this claim was actually analyzed by the district court. I think what the district court was doing was looking at qualified immunity at, and remember that in front of the district court, the defendants did not make a merits argument, right? And so in front of the district court, the district court was asking the fundamental question, is this conduct that any reasonable official would know would be unlawful, in which case there's no qualified immunity, or is this conduct that the defendants should have known, that any reasonable official would have known, what did violate Mr. Matzel's rights? And so I think because of that, there's a way- There was no analysis of the eighth amendment claim, was there? There was no- As to what the requirements are for an eighth amendment claim. That's correct, your honor. Yeah. But what I'm trying to say, your honors, is that because fundamentally the conduct was illegal, we didn't need to have a separate analysis. You have focused on the clarity of the illegality of the defendant's conduct under state law. But the Supreme Court has said that in order to defeat a claim of qualified immunity, it's not enough that the conduct be clearly illegal under state law, it must also clearly violate federal law. Now, as I was saying to your adversary, I don't think that makes any sense, but the Supreme Court has said it, and why isn't that a problem for your position here? I mean, you can persuade us absolutely 100% that the conduct clearly violated state law. And yet, how do you get over the hurdle of the requirement of clarity that there was a violation of federal law, whether it's one constitutional provision or another? So, your honor, we can get over that hurdle because in early, this court said that it violates federal law, it violates the due process clause to alter a sentence. And what they were doing here was indisputably altering a sentence. The only way they could claim that this was not altering a sentence is if they had some other, if they had some interpretation of the statute that was reasonable, and they don't. The plain terms of the statute make clear that what they were doing was an alteration of the court sentence. So the clarity, it had to do not with when he got out of prison, it had to do with whether he got into the shock program, that was what the sentence required. Not that he be released at an earlier date, but that he get into the shock program. Well, what the sentencing court ordered was that he be entered into this program so that he had the opportunity to be released at an earlier date. Your adversary has put it in terms of there being no clarity that he would actually get out any earlier because he could flunk out of the shock program, but that's not the point. Your point is, he was required by the sentence and by the law to be admitted to the program. Absolutely, Your Honor. If there's no further questions, thank you. Thank you. Just two things, briefly, Your Honors. With respect to the due process claim, I would just refer the court to the decisions in Sudler v. City of New York and Francis v. Fiaco for the extent of the rule that was clearly established in early. Because if early clearly established that any deviation from the court's instructions is a due process violation, those cases would have come out differently. Are those cases distinct in the sense that in those cases you have actually conflicting legal commands? You have a sentencing judge saying one thing, a law saying something different. Here you have the sentencing judge saying one thing and docs deciding to do something else. Well, in Sudler, the court never resolved what state law required. It didn't find it necessary to do that, to decide that it was still materially different from the issue presented in Early v. Murray. And that's the distinction. We don't have to have the same facts as Sudler and Francis. We have to have materially different facts from Early v. Murray. And because that involved an augmentation of a sentence of term that wasn't pronounced by the court, it doesn't clearly establish what happened here. There might be something that's so flagrant, you know, if docs extended the maximum term of an individual's sentence without any basis, or even with a statutory basis that was clearly unconstitutional. Maybe that would be so clear, but the court's instructions regarding a programming that gave an opportunity. If you're calling it an instruction, the judge didn't say, well, I recommend that he have shock, which would have been prior to 2009 what a judge could do, because they couldn't order it back then. Now a judge can order it, and this judge did order it, and so calling it a directive, I. Well, it's because it doesn't, the court, the judge can't enroll. The person has to be eligible, and they have to be legally eligible, and they have to be time eligible. If they're not legally eligible, the state courts say, even though the court, the sentencing court said that, we take that to be a non-binding recommendation, because the person has to be statutorily eligible. Plaintiff was here, we're not saying he wasn't. But it's different than a maximum term of a sentence or an additional term of custody, which is what PRS has considered, which was at issue in early V. Murray. And on the Eighth Amendment, I just wanted to add two things quickly. H.E.R.D. also instructs for the first time that not being released on what was in that case, a mandatory conditional release date was punishment, that it wasn't clearly established before H.E.R.D. that being released from prison before the maximum expiration date was punishment in the constitutional sense. And with respect to the requisite state of mind, I would just point out, despite their allegations in their complaint, plaintiffs do rely on the court decisions in the state court case and in this case. And it is clear from those decisions that the defendants were relying on an interpretation of a statute, a mistaken, as it turned out, a mistaken interpretation, but an interpretation of a statute, not acting to ignore the law. What is your interpretation of the holding of early V Murray? Well, I think Francis teaches that for purposes of qualified immunity, its context matters. So the holding is that if you deviate from a court's sentence by adding a term that was not pronounced by the court, that is a due process violation. And that's a procedural due process violation. Here we actually have a substantive due process claim, which this court said in HERD, is materially different from a procedural due process claim. So I think for all these reasons, early V Murray does not clearly establish the law applicable here. Thank you. Thank you both. We'll take it under advisement.